UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,           :           13 Cr. 414 (SHS)

                    Plaintiff,      :

          -against-                 :

KEYEWANIE BLACKLEDGE, et al.,       :

                    Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -- - x

## MEMORANDUM OF LAW IN SUPPORT OF
## PRE-TRIAL MOTIONS FOR DEFENDANT KEYEWANIE BLACKLEDGE

### Preliminary Statement

This memorandum of law is respectfully submitted in support of the Pre-trial Motions on

behalf of Keyewanie Blackledge submitted herewith, seeking: (1) an Order pursuant to Rule

12(b)(3)(C) of the Federal Rules of Criminal Procedure Suppressing Physical evidence

recovered, on the grounds that any items seized were the product of an unlawful "stop and frisk,"

an  unlawful arrest and alleged statements in violation of *Miranda*; (2) An Order pursuant to Rule

12(b)(3)(C) of the Federal Rules of Criminal Procedure suppressing statement evidence, in that

such statements were the product of an unlawful stop and frisk and an unlawful arrest, and

because any alleged statements made were not voluntary, were the result of custodial

interrogation and were made without the defendant having been advised of his *Miranda* rights;

(3) an Order directing the government to disclose to the defendant any and all acts which the

government would seek to introduce against the defendant pursuant to Federal Rule of Evidence

404(b) in such sufficient and reasonable time that the defendant may make a 404(b) motion to

preclude the introduction of such evidence; (4) an order directing disclosure of any *Brady*

material; (5) an Order Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure

permitting a Bill of Particulars requiring the Government to set forth certain information should

same become necessary; (6) an order permitting KEYEWANIE BLACKLEDGE to make such

other and further motions as may be appropriate upon receipt and review of further discovery;

and (7) such other and further relief as to this Court may seem just and proper.

## Statement of Facts

Keyewanie Blackledge, along with five (5) other defendants, is named, in a two count

superseding indictment charging him with 21 U.S.C. § 841(b)(1)(a), (b), (c) and (d) and 18

U.S.C. § 924 (c) (1)(A) (i), (ii), and (iii).

**I.      April 29, 2012**

With respect to the overt acts alleged in paragraph 9(a) of the Government's Superseding

Indictment, on April 29, 2012 in the early morning hours of that day at approximately 2:15 am,

Mr. Blackledge, the defendant herein, was walking down the street near Grand Avenue in Bronx

County when he was approached by two (2) uniformed New York City Police officers.  Without

warning, Mr. Blackledge was advised to face a wall where he was frisked by one of the officers.

That officer then placed his hand in Mr. Blackledge's buttocks and recovered a quantity of

narcotics, to wit, crack cocaine.

Mr. Blackledge was not engaged in any unlawful activity to warrant the stop and frisk.

Upon recovery of the narcotics, Mr. Blackledge was placed under arrest, put in the back of a

patrol vehicle and transported to a Bronx precinct.  He was not given his *Miranda* warnings

either at the time of his arrest or at any time during transport to the precinct.

Within the discovery materials turned over by the Government, there is a "Defendant's Statement" sheet, (attached as Exhibit "A" to the Affirmation of John F. Kaley, dated April 15, 2014 and submitted in support of the motions (hereinafter "Kaley Aff.")),[1] that lists the statements alleged to have been made by Mr. Blackledge. That list includes the following statements, in sum and substance: "NO" and "WEED; I HAVE OTHER DRUGS," in response to the Arresting officer's questions, "DO YOU HAVE ANY WEAPONS ON YOU?" and "WHAT DID YOU STUFF IN YOUR PANTS?" Interestingly, the Government also turned over another separate detailed statement, alleged to have been made by Mr. Blackledge wherein he informed the officers of the location of two firearms. ("A copy of the alleged statement is attached to the Kaley Aff. as Exhibit "B"). The statements alleged in Exhibit "B" are in no way reflected or referenced on the "Defendant's statement" list in Exhibit "A", nor is Mr. Blackledge's name or any identifying information of Mr. Blackledge reflected on the detailed report within Exhibit "B".

Furthermore, Mr. Blackledge was not charged with possession of the firearms nor does the Complaint in the State case reference any such statements by Mr. Blackledge. (See a copy of the local court criminal complaint, attached to the Kaley Aff. as Exhibit "C"). Mr. Blackledge pled guilty to New York Penal Law § 220.03, one count of misdemeanor possession of a controlled substance, to wit, crack cocaine.

Assuming *arguendo* that the statements in question were made by Mr. Blackledge, there is no indication within the discovery materials turned over that *Miranda* warnings were given to

---

[1] All exhibits are annexed to the Affirmation of John F. Kaley, Esq., dated April 15, 2014 and submitted in support of the motions.

Mr. Blackledge prior to the alleged statements being made. Specifically with respect to the detailed statements which purport to provide information as to where firearms are located, Mr. Blackledge was in the back of a patrol vehicle when he was allegedly questioned by the police. Mr. Blackledge was in police custody at that time and should have been advised of his right against self-incrimination and his right to counsel. Upon information and belief, Mr. Blackledge was not advised of his *Miranda* warnings.

**II.      September 4, 2011**

With respect to the Bill of Particulars turned over on April 10, 2014 and attached to the Kaley Aff. as Exhibit "D", the Government alleges that Mr. Blackledge possessed a loaded firearm on September 4, 2011. On September 4, 2011, Mr. Blackledge was standing in front of 1815 177th Street, Bronx County when he was approached by police officer(s) and unlawfully searched. Mr. Blackledge was arrested on Jerome Avenue. Police officers claim to have recovered a firearm as a result of this arrest and charged Mr. Blackledge with possession said firearm. This case was ultimately dismissed in Bronx Criminal Court. It appears that the police prepared a report referring to this incident. A copy is annexed as Exhibit "E" to the Kaley Aff.

**POINT I**

**THE EVIDENCE SEIZED FROM MR. BLACKLEDGE MUST BE SUPPRESSED**

The Fourth Amendment safeguards citizens against unreasonable searches and seizures.[2] *Terry v. Ohio*, 392 U.S. 1, 30 (1968) permits an investigating officer to stop and briefly detain an individual for questioning when they have reasonable suspicion supported by articulable facts that criminal activity may be afoot." *See*, *United States v. Sokolow*, 490 U.S. 1, 7, (1989)

---

[2] *Terry v. Ohio* 392 U.S. 1, 30 (1968).

(*quoting Terry v. Ohio*, 392 U.S. 1, 30, (1968)); *see also United States v. Tehrani*, 49 F.3d 54, 58 (2d Cir.1995). "While reasonable suspicion is a less demanding standard than probable cause and requires a showing . . . less than preponderance of the evidence, the Fourth Amendment requires a minimal level of objective justifications for making the stop." [3]

"The court must evaluate those circumstances "through the eyes of a reasonable and cautious police officer on the scene . . . [a] district court must not merely defer to the police officer's judgment. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances." *Citing to, United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000); *quoting Terry* at 21. *See also*, *United States v. Oates*, 560 F.2d 45, 61 (2d Cir 1977).

"[T]he officer making the stop must be able to articulate something more that an inchoate and unparticularized suspicion or hunch." Reasonable suspicion is an objective standard hence the subjective intentions or motives of the officer are irrelevant. *Citing to Bayless*, at 133; *see also United States v. Scopo*, 19 F.3d 777, 781 (2d Cir. 1994).

Whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person." *Ligon v. City of New York, citing to Terry v. Ohio* at 16. Here, as Mr. Blackledge states in his declaration, he was subject to stop and frisks frequently in his neighborhood. It was customary for Bronx Police officers to stop him, detain him and search

---

[3] *Ligon v. City of New York*, 925 F. Supp. 2d 478 (S.D.N.Y. 2013); *quoting, Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *see also, United States v. Sokolow*, 490 U.S. 1, 7 (1989).

him.

Furthermore, the discovery material turned over by the Government is void as to any facts which support a reasonable suspicion on the part of the officers to justify the *Terry* stop of Mr. Blackledge. Mr. Blackledge alleges that on April 29, 2012 and on September 4, 2011, he was not engaged in any misconduct or criminal activity when he was approached by the police officers. Mr. Blackledge states that on April 29, 2012, he was stopped, placed against the wall and frisked and intimately searched within his buttocks where narcotics were alleged to have been recovered and he then was placed under arrest.

The officers herein lacked the reasonable suspicion to stop Mr. Blackledge on both occasions and further they lacked probable cause to search and arrest him. In *Dunaway v. New York*, 442 U.S. 200 (1979), the Supreme Court held that the police had violated the Fourth and Fourteenth Amendments when, without probable cause to arrest, they seized the petitioner and transported him to the police station for interrogation. ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has `seized' that person"); *United States v. Mendenhall*, 446 U.S. 544, 554-55, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) ("We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."), *Dunaway v. New York*, 442 U.S. 200, 207 (1979).

-6-

*Florida v. Royer*, 460 U.S. 491 (1983) held that ". . . Terry and its progeny nevertheless created only limited exceptions to the general rule that seizures of the person require probable cause to arrest. Detentions may even be "investigative" yet they violate of the Fourth Amendment.

In the name of investigating a person who is no more than suspected of criminal activity, the police may not carry out a full search of the person or other effects. Nor may the police seek to verify their suspicions by seizure of the person. *Dunaway* made this clear. There, the suspect was taken to the police station from his home and, without being formally arrested; he was interrogated for an hour. The resulting incriminating statements were held inadmissible: reasonable suspicion of a crime is insufficient to justify custodial interrogation even though the interrogation is investigative. *Id.*, 442 U.S. at 211-212; *see also, Brown v. Illinois*, 422 U.S. 590; *Davis v. Mississippi*, 394 U.S. 721.

*Royer* held further that, "The predicate permitting seizures on suspicion short of probable cause is that law enforcement interests warrant a limited intrusion on the personal security of the suspect. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. However, this much, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *See*, *e.g.*, *United States v. Brignoni-Ponce*, 422 U.S. 873, at 881-882, (1975); *Adams v. Williams*, 407 U.S. 143, at 146 (1972). It is the Government's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was supported by the facts and was "sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *Florida v. Royer*, 460 U.S. at 500.

Applying these legal principles to the facts of this case it is clear that, on April 29, 2012 and September 4, 2011, the initial encounter between Mr. Blackledge and law enforcement officers crossed the line, and were not supported by reasonable suspicion in violation of the rule of *Terry*. The unlawful *Terry* stop and frisk then morphed into full blown arrests and unlawful searches without probable cause. On both occasions, the officers did not observe Mr. Blackledge engaging in any unlawful conduct, yet he was stopped, frisked, seized, searched, handcuffed and arrested. In each instance, the police officers seized Mr. Blackledge without a reasonable suspicion that criminality was afoot and without probable cause.

The seizures of the defendant without reasonable suspicion also requires the suppression of any alleged statements attributed to Mr. Blackledge, the narcotics recovered and the alleged weapons recovered as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471 (1963).

The totality of circumstances surrounding the seizure and detention of Mr. Blackledge requires that any and all items recovered pursuant to his arrest be suppressed, or that in the alternative a hearing be granted to determine the issues raised herein.

## POINT II

### THE DEFENDANT'S STATEMENTS MUST BE SUPPRESSED

Any statements attributed to Mr. Blackledge should be suppressed as the "fruit" of the unlawful detention. However, even were the Court to conclude that the stop, frisk, seizure and arrest of the defendant were lawful, any statements attributed to Mr. Blackledge should be suppressed as the product of *un-Mirandized* custodial interrogation and as not voluntary.

Because the New York City Police officers violated Mr. Blackledge's rights against self-

-8-

incrimination under the Fourth, Fifth and Sixth Amendments of the Constitution, any and all alleged post- arrest statements must be suppressed. *Dunaway v. New York*, 442 US 200 (1980); *Miranda v. Arizona*, 384 U.S. 436 (1966); *Maine v. Moulton*, 474 U.S. 159 (1985); *Edwards v. Arizona*, 451 U.S. 477 (1981); *Wong Sun v. United States*, 371 U.S. 471, 479, (1963)*; Alexander v. Connecticut*, 876 F2d. 277 (2d Cir. 1989); *United States v. Scalf*, 708 F2d. 1540 (10th Cir. 1983); *United States v. Montgomery*, 714 F2d. 201 (1st Cir. 1983).

The Government must prove by a preponderance of the evidence that Mr. Blackledge waived his *Miranda* rights. *Colorado v. Connelly,* 479 U.S. 157, 168 (1986). In order to prove a valid waiver, the Government must show (1) that the relinquishment of the defendant's rights was voluntary and (2) that the defendant had a full awareness of the right being waived and the consequences of waiving that right. *See, Moran v. Burbine*, 475 U.S. 412, 421 (1986). It is well settled that a waiver of *Miranda* rights is valid only if it is the product of a knowing and voluntary choice. *See, Colorado v. Spring,* 479 U.S. 564, 573 (1987)*; United States v. Bye,* 919 F.2d 6, 8-9 (2d Cir. 1990)*; United States v. Mathurin,* 148 F.3d 68 (2d Cir. 1998)*; Dickerson v. United States*, 500 U.S. 428 (2000). The "question of waiver must be determined on 'the particular facts and circumstances surrounding [each] case.'" *Id*. In assessing the validity of a waiver, courts must analyze the totality of the circumstances surrounding the interrogation. *Moran v. Burbine,* 475 U.S. 412 (1986). Any statements obtained as a result of the unlawful police conduct must be suppressed. *Dunaway*, *Wong Sun, supra*.

The examination of the propriety of the police conduct must necessarily commence with an inquiry as to whether or not the requirements of the Fourth Amendment were satisfied. Here, on the facts disclosed so far, the Government cannot satisfy its burden of proving by a

-9-

preponderance of the evidence that the statements allegedly attributable to the defendant are admissible and were not the fruit of an illegal arrest. *See, Brown v. Illinois*, 422 U.S. 590, 604 (1975); *Dunaway v. New York*, 442 U.S. 200 (1979). *See also*, *United States. v. Tucker*, 610 F.2d 1007 (2d Cir. 1979). *Dunaway* and *Brown* hold that statements given during a period of illegal detention are inadmissible even though voluntarily given if they are the product of the illegal detention and not the result of an independent act of free will.

Because in this case the statements allegedly made by the defendant on April 29, 2012 were the product of an illegal, unconstitutional arrest without probable cause, those statements must be suppressed. *See, Dunaway v. New York*, *supra*, and *Brown v. Illinois*, *supra*, at 601-602, 95 S.Ct., at 2260-2261. In this respect, these cases reiterated one of the principal holdings of *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), i.e. that illegally obtained evidence must be suppressed as fruit of the poisonous tree.

The alleged statements of April 29, 2012 were also obtained without a knowing, intelligent and voluntary waiver of the defendant's rights against self-incrimination. There can hardly be a waiver of those rights when no *Miranda* warnings were given. The defendant's statements were the result of custodial interrogation during which he was not advised of his right again self-incrimination or his right to counsel as required by *Miranda*.

The Supreme Court's holding in *Miranda* was designed to safeguard a suspect's Fifth Amendment constitutional guarantee against self-incrimination. *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2401 (2011); *United States v. Johnson*, No. 11-2690. (7th Cir 2012)

Here, the statements attributed to Mr. Blackledge regarding the firearms, within Exhibit "B" are alleged to have been made after he was placed under arrest, in the back of a patrol car,

-10-

during an interrogation, without being advised of his rights under *Miranda*. Nothing in any report indicates that Mr. Blackledge had been advised of his *Miranda* rights. If an individual makes a statement during custodial interrogation, the burden is on the Government to show, as a "pre-requisit[e]" to the statement's admissibility as evidence in the Government's case in chief, that the defendant "voluntarily, knowingly and intelligently" waived his rights. *Dickerson v. United States*, 530 U.S. 428, 435 (2000).

Plainly, Mr. Blackledge was in custody. In determining whether the waiver of an individual's rights pursuant to *Miranda* and its progeny, was voluntary or not depends on a subjective analysis of the particular individual and circumstances involved in the interrogation.

An important component of this determination is whether or not the waiver was made knowingly, intelligently and voluntarily, that is with full comprehension of the waiver itself as well as the ramifications of the waiver. Here, according to the materials turned over by the Government, Mr. Blackledge was already placed under arrest and placed in the back of the police car, whereupon the officer began an interrogation of with Mr. Blackledge by asking him if he knew anything about shootings in the area. No *Miranda* warnings were givien. Prior to this conversation, Mr. Blackledge should have been given his *Miranda* warnings. The statements of April 29, 2012 must be suppressed for the reasons stated above. At a minimum, Mr. Blackledge is entitled to a hearing on the issues raised herein.

-11-

## POINT III

## DISCLOSURE OF *BRADY* MATERIAL AND
## STATEMENTS OF INTERVIEWED INDIVIDUALS

The defendant Mr. Blackledge moves, for the production of *Brady* material and in

accordance with the Supreme Court decision in *Kyles v. Whitley*, 514 U.S. 419 (1995),

specifically for the production of 1) any contradictory or inconsistent statements made to any law

enforcement personnel/prosecutors by any individual[s], regardless of whether the Government

intends to call those individuals in its direct case; and 2) any evidence that would tend to inculpate

someone other than Mr. Blackledge in the superseding indictment; and 3) or any evidence which is

inconsistent with the theory of the Government's case, as set forth in its superseding indictment, as

it pertains to the role or activity of Mr. Blackledge.

The essence of the Government's case will be the results of wiretaps and the testimony of

the law enforcement officers involved in the arrest and interrogation of Mr. Blackledge. Upon

information and belief, the Government has interviewed several police officers and informants and

others in connection with the investigation of this case. The statements of these individuals may

be contradictory or inconsistent with statements of each other or statements that were previously

made by the witnesses themselves, or contrary to the Government's theory of the case or the

charges filed.

Accordingly, Mr. Blackledge requests that the Government provide him with the

statements of any individual, which are: 1) inconsistent or contradictory with prior statements

made by that individual; 2) inconsistent or contradictory with the statements of others

interviewed; and 3) inconsistent or contradictory with the Government's theory of prosecution in

-12-

its case against the defendant Mr. Blackledge. The defendant requests the production of these statements or evidence, whether the Government intends to call the individual as a witness.

The *Kyles* decision itself involved a New Orleans, Louisiana homicide prosecution, where the police withheld from the prosecutor inconsistent statements of its witnesses and other evidence tending to implicate another individual. When the defense filed a detailed pre-trial motion for the disclosure of *Brady* material, the prosecution filed the routine "boiler plate" response that no exculpatory evidence existed. After a jury was unable to reach a verdict in the first trial, the defendant was convicted on re-trial and was sentenced to death. It was during the post-judgment proceedings that the defendant Kyles discovered the existence of overwhelming exculpatory evidence in the police files.

When the case reached the United States Supreme Court, the Court determined that a *Brady* violation existed when the Louisiana state prosecutor suppressed a series of inconsistent and contradictory statements made by its main informant and other civilian eyewitnesses concerning physical evidence seized and the identification of the defendant as a participant. Although, the opinion in *Kyles* is a fact-based analysis of whether there was, in fact, a "reasonable probability" that the suppressed statements would have led to a different result by the jury, the Court took the opportunity to address the prosecutor's affirmative obligations under *Brady*.

In *Kyles,* the Louisiana state prosecutor argued that it should not be held accountable under both *Bagley* and *Brady* for evidence known "only" to the police investigators and not known to the prosecutor. Justice Souter specifically rejected this narrow view of prosecutorial responsibility: *Kyles, supra.* "[A]ny argument for excusing a prosecutor from disclosing what

-13-

he does not happen to know about boils down to a plea to substitute the police for the
prosecutor, and even for the courts themselves, as the final arbiters of the Government's
obligation to ensure a fair trial." The Court concluded that the "prosecutor has a duty to learn of
any favorable evidence known to others acting on the Government's behalf in the case, including
the police." *Kyles*, *citing Giglio v. United States*, 405 U.S. 150, 154 (1972), Justice Souter
recognized that "procedures and regulations" can be established to insure the communication of
exculpatory evidence between police investigator and prosecutor, so that the prosecutor can
meet its *Brady* obligations.

Therefore, the prosecution has an affirmative duty to specifically inquire of each
investigating officer whether he or she is aware of any exculpatory information. And, Justice
Souter was confident that the "prudent prosecutor will resolve doubtful questions in favor of
disclosure." *Id.* at 509 (quoting *United States v. Agurs*, 427 U.S. 97, 108 [1976]).
As stated above, the defendant is entitled to the disclosure, whether or not the Government
intends to call the individuals as witness.

Additionally, the defendant requests production of any inconsistent statement of any
witness and other evidence that might raise questions concerning the reliability or integrity of
any confidential informant/cooperator or former cooperator. *Giglio v. United States*, 405 U.S.
150, 154 (1972).

The credibility of witnesses will impact the jury's ultimate verdict. The United States
Supreme Court has long held that a defendant has a 5th Amendment due process right to any
evidence that may be used to challenge the credibility of such witnesses. *Giglio v. United
States*, 405 U.S. 150 (1972). The request for *Giglio* material is distinguished from the request

-14-

made pursuant to *Kyles*.

While both *Kyles* material and *Giglio* material are discoverable under *Brady v. Maryland*, 427 U.S. 83 (1963), they are both conceptually distinct. In *Kyles,* the Supreme Court held that a *Brady* violation exists where the prosecution fails to furnish the defense with inconsistent and contradictory statements of an informant which have a "reasonable probability" to impact the jury's consideration of the *charged conduct*. In *Giglio*, the Supreme Court held that when the reliability of a witness is central to the case, evidence affecting that the credibility of that witness falls within the rule of *Brady v. Maryland*, 427 U.S. 83 (1963).

In *Brady v. Maryland*, 427 U.S. 83 (1963), itself, the Supreme Court affirmed the reversal of a state court homicide conviction because the prosecution, despite the defendant's attorney's request to produce statements, withheld a co-defendant's statement that the co-defendant, not the defendant, had actually killed the victim.

> "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady, id.* at 87.

Under *Brady* and its progeny, the Government has an affirmative duty to disclose favorable evidence known to it, even where that has been no specific disclosure request is made by the defense. *United States v. Bagley*, 473 U.S. 667, 678 (1985); *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995). As stated above, this rule encompasses both exculpatory and impeachment evidence. *Wood v. Bartholomew*, 516 U.S. 1 (1995).

The Government will often argue that the materials specifically requested by the defendant, pursuant to *Kyles* are not discoverable at this time because those materials

-15-

constitute either *Giglio* or 3500 material under 18 USC § 3500. While it may be true that the requested materials may be either *Giglio* or 3500 material the requested materials are also *Brady* materials. The fact that the requested materials may be categorized as both *Brady* and/or *Giglio* or 3500 materials does not determine the immediacy of discovery of those materials. The United States Supreme Court in *Kyles* did not render its decision so that the discovery requirements set forth in *Kyles* are somehow rendered inapplicable by the fact the materials are also *Giglio* or 3500 materials. Indeed, in making its decision in *Kyles* the Supreme Court was well aware of the pre-existent requirements for timeliness of discovery materials that are either *Giglio* or 3500 materials. Nonetheless, the holding in *Kyles* did not make the materials the court held must be disclosed pursuant to *Kyles,* subject to any other disclosure requirements.

In fact, the due process considerations which are the foundation of the decision in *Kyles* mandate the materials requested by the defendant be turned over to the defendant as promptly as possible to permit the defendant to adequately prepare his defense.

The Government cannot legitimately argue that the defendant is not entitled to the specific *Kyles* materials the defendant requested because those materials may also be categorized as either *Giglio* and/or 3500 materials. Therefore, it is respectfully requested that the court order the Government to immediately disclose to the defendant: 1) any c o n t r a d i c t o r y or inconsistent statements made by or to any law enforcement personnel/ prosecutors by any individual[s], regardless of whether the Government intends to call those individuals in its direct case; and 2) any evidence that would tend to inculpate someone other than Mr. Blackledge in either count of the indictment; and 3) or any evidence which is

-16-

inconsistent with the theory of the Government's case, as set forth in its indictment, as it pertains to the role or activity of Mr. Blackledge.

The Supreme Court did not say that the material should be turned over later but rather the opinion deems such material essential to the preparation of the defense case not simply for cross examination of witnesses. Therefore the court should direct the Government to immediately provide the defendant with all *Kyles* materials.

## POINT IV

## EVIDENCE OF UNCHARGED CRIMES OR OTHER BAD ACTS

The defendant Mr. Blackledge moves pursuant to Federal Rule of Evidence 404(b) to preclude the Government from offering at his trial evidence of uncharged crimes, or in the alternative, requests an order, pursuant to Fed. Rule of Crim. Proc. 16 (a)(1)( c), directing the Government to disclose any and all acts which the Government would seek to introduce against the defendant pursuant to Federal Rule of Evidence 404(b) in such sufficient and reasonable time that the defendant may make a 404(b) motion to preclude the introduction of such evidence.

A defendant in a criminal case must be afforded "a fair opportunity to meet the critical and damaging proof of an offense not presented against him in the indictment." *United States v. Baum*, 482 F.2d 1325, 1332 (2d Cir. 1973). In this way, a defendant may seek pre-trial rulings to bar the admission of such evidence and at the same time also prepare to meet any such evidence ruled admissible after the pre-trial rulings. Indeed, in *Baum*, the Second Circuit reversed a conviction where the Government failed to give adequate notice of other crimes evidence. The Court stated:

> "Confronted for the first time with the accusation of prior criminal conduct and the identity of the accuser, the defendant had little or no opportunity to meet the impact of this attack in the midst of the trial. This precarious predicament was precipitated by the prosecutor."

-17-

*United States v. Baum*, 482 at 1331.

*Baum* offers compelling support for pre-trial disclosure of similar act evidence. In *United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988), the Second Circuit reversed a R.I.C.O. conviction where the Government had offered proof of racketeering activity that it had refused to identify in a bill of particulars. The Second Circuit stated:

> "We do not mean to imply that even in a RICO case the prosecution must always disclose in advance of trial every act it will prove that may violate some criminal statute. But here it is simply unrealistic to think that a defendant preparing to meet charges of extorting funds from one company had a fair opportunity to defend against allegations of extortion against unrelated companies, allegations not made prior to trial."

*United States v. Davidoff*, 845 F.2d at 1154.

In the Second Circuit, evidence of uncharged crimes are admissible as long as the evidence of the uncharged acts are relevant to some disputed issue in the trial and that and that the evidence does not show a propensity for criminality on the part of the defendant, *United States v. Brennan*, 798 F.2d 581 (2d Cir. 1986).

In *Huddleston v. United States*, 485 U.S. 681 (1988), the United States Supreme Court overruled the Second Circuit's then established rule that similar act evidence could be admitted only where the Government established the existence of that act by a preponderance of the evidence. Under *Huddleston*, the Government must only present evidence that would allow the jury to "reasonably conclude" that the defendant committed the act. Pre-trial disclosure of similar act evidence is therefore all the more "material" to the preparation of the defense, in light of *Huddleston's* relaxation of the Government's proof burden.

While the Supreme Court ruled in *Huddleston* that the District Court was not required to determine that an uncharged crime or act was proved by a preponderance of the evidence before

-18-

admitting it, the Court established a four pronged test which must be satisfied before evidence of uncharged crimes are admitted. The evidence sought to be admitted must: (1) Be offered for a proper purpose as defined in Federal Rule of Evidence 404(b); (2) Satisfy Federal Rule of Evidence 402 as enforced by Federal Rule of Evidence 104(b); (3) Satisfy Federal Rule of Evidence 403 as to the probative value of the evidence outweighing its prejudicial impact; (4) Pursuant to Federal Rule of Evidence 105 a limiting instruction can be given by the court which would properly guide the jury in the manner in which the evidence sought to introduced is to be used. Resolution of these issues in advance of trial clearly is preferred so that a defendant has time and opportunity to investigate any alleged other crimes evidence.

Accordingly, the defendant moves for an order directing the Government to disclose any and all acts which the Government would seek to introduce against the defendant pursuant to Federal Rule of Evidence 404(b) in such sufficient and reasonable time that the defendant may make a 404(b) motion to preclude the introduction of such evidence.

## POINT V

### REQUEST FOR A BILL OF PARTICULARS AS TO THE SUPERSEDING INDICTMENT

At the last pre-trial conference, the Court strongly suggested to the Government that it provide the alleged acts of violence for the racketeering conspiracy charges as the predicate for the 924(c) charge on which the Government will rely at trial. By letter dated April 10, 2014, the Government has provided certain information. Nonetheless, the defendant reserves his right to seek further particulars as may be necessary.

The function of a Bill of Particulars is to provide defendant with information about the details of the charge against him if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at trial." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (quoting 1 C. Wright, Federal Practice and Procedure § 129 at 434-35 (2d ed. 1982)). The function of a Bill of Particulars is not to allow the defendant to acquire evidentiary detail. *Torres*, 901 F.2d at 234. The decision whether to grant a Bill of Particulars rests in the discretion of the trial court. Id. As noted above, Mr. Blackledge respectfully reserves the right to seek court-ordered particulars if necessary.

## POINT VI

## MISCELLANEOUS REQUESTS

Mr. Blackledge requests the permission of the Court to make further and other motions when and if the facts of the case may require.

Mr. Blackledge requests leave to join in the motions of his co-defendants insofar as they are applicable to him

## CONCLUSION

For all of the reasons stated herein, the defendant's motion 1)to suppress physical evidence; 2) to suppress statements; 3) for the timely production of 404(b) evidence; 4) for the disclosure of *Brady* material and particularly the statements of witnesses which are exculpatory or which contradict the Government's case; 5) for a leave to seek further Particulars as may

-20-

become necessary; and 6) for leave to join in the motions of his co-defendants insofar as they

may be applicable to him, should be granted.

Dated: New York, New York
       April 15, 2014

                                    Respectfully submitted,


                                    _____/S/_____

                                    John F. Kaley   (JFK: 3598)
                                    Doar Rieck Kaley & Mack
                                    217 Broadway, Suite 707
                                    New York, New York 10007
                                    Karen H. Charrington, Associate Counsel
                                    *Attorneys for Keyewanie Blackledge*


To:   Clerk of the Court (ECF)
      AUSA Christopher DiMase (via ECF and e-mail)
      AUSA Amy Garzan (via ECF and e-mail)
      Co-defendant's Counsel (via ECF and e-mail

-21-